UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID L. WELSH,

                Plaintiff,

     v.

METROPOLITAN LIFE INSURANCE
COMPANY, and DELOITTE & TOUCHE
GROUP INSURANCE PLAN,

                Defendants.

No. C04-5143RBL

ORDER GRANTING
DEFENDANT'S MOTION
FOR A PROTECTIVE
ORDER, ESTABLISHING
STANDARD OF REVIEW,
AND DENYING
MOTIONS FOR
SUMMARY JUDGMENT

**SUMMARY**

    This matter is before the court on the following Motions: (1) Defendants' Motion for a Protective Order  [Dkt. #19 ]; (2) Defendants' Motion for Summary Judgment on the applicable standard of review and, based on the applicability of the deferential "abuse of discretion" standard they advocate, for Summary Judgment on the merits, [Dkt. #26] and (3) Plaintiff's Response to the Defendants' Motion for Summary Judgment, which in turn seeks Summary Judgment in the Plaintiff's favor [Dkt. #27].

    Plaintiff  Welsh was employed by Defendant Deloitte & Touche.  He was the beneficiary of a long term disability insurance policy (the "Plan")  offered by Deloitte & Touche and governed by the Employee Retirement Income Security Act (ERISA).  Defendant Metropolitan Life Insurance Company ("MetLife") was the Plan's Claims Administrator.  Deloitte & Touche was the Plan Administrator.

Defendants rejected Plaintiff's claim for disability benefits under the Plan.  He appealed, MetLife was not persuaded, and he sued.  The District Court for the Central District of California granted Defendants' Motion for Summary Judgment and Welsh appealed.  The Ninth Circuit reversed and remanded, finding that MetLife had not applied the proper definition of "disabled" to Mr. Welsh.  MetLife reviewed Mr. Welsh's claim again, reviewing additional medical and other evidence, and again rejected it. Plaintiff sued again, this time in this court.

Plaintiff has propounded discovery to the Defendants which, they claim, goes well beyond the bounds of permissible discovery in an ERISA case.  For example, he seeks documents that are not contained in the administrative record developed below, and seeks to take several depositions.  In response, Defendants seek a protective order, which is based primarily[1] on their contention that the standard of review in the case is the deferential "abuse of discretion" standard.  Plaintiff argues that the standard of review is *de novo*, based on his contention that there is evidence of a conflict of interest, and that that conflict caused a breach of the fiduciary's [MetLife's] obligations to him.

Defendants, recognizing that the availability of "new" discovery turns on the standard of review, seek a summary ruling that the standard to be applied in this case is abuse of discretion. They also seek summary judgment on the merits, based on this deferential standard. Plaintiff, in turn, argues that the standard is *de novo*, and seeks summary judgment in his favor.

As the parties recognize, the resolution of the Defendants' Motion for a Protective Order, and perhaps the merits of the Plaintiff's claim itself, depends on the proper standard of review.  Because the policy in question did unambiguously permit the fiduciary to exercise discretion, and the Plaintiff has not established that the fiduciary had a conflict of interest that caused a breach of its fiduciary obligations, the

---

[1]The Defendants also argue that even if the standard of review is *de novo*, the court should not consider evidence that was not before the administrator, and that additional discovery should not be permitted in any event.

court concludes that the proper standard of review is abuse of discretion.  The impact of this determination on the merits is discussed below.

### FACTUAL AND PROCEDURAL BACKGROUND

The parties, particularly the Plaintiff, have submitted a lengthy and detailed factual record.  Indeed, the bulk (if not the entirety) of the administrative record reflecting the handling of Plaintiff's claim for long term disability benefits has been submitted.  The court has reviewed the same, and will repeat only the highlights here.

In 1994, Plaintiff David Welsh was employed by Deloitte & Touche as a CPA/tax consultant. During the spring and summer of that year, Mr. Welsh had problems with the work he was performing, as well as those he worked with.  In April, he received a negative review.  Defendants claim that he was informed shortly thereafter that he was going to be fired, due to the performance issues and personality conflicts.  Plaintiff does not address this directly, but concedes that he received a "negative" memo.  It is agreed that Mr. Welsh's last day at Deloitte & Touche was August 31, 1994, and that he opened and attempted to operate his own tax consulting firm shortly thereafter.

That endeavor apparently failed, for reasons that are disputed but not critical to the determination at issue here.  On November 29, 1994, Mr. Welsh applied for benefits as "disabled" under the Deloitte & Touche long term disability Plan.  He claimed that his disability date was July 13, 1994.  His primary Physician, Dr. Azer, was less than helpful in describing Mr. Welsh's disability and in MetLife's subsequent attempts to elicit further information about it.  It appears that Mr. Welsh's primary initial complaints were depression, chronic pain, migraines, inability to sleep/falling asleep at work, glaucoma, and fatigue.  His time records reflect that Mr. Welsh missed significant amounts of work due to sick leave during the late spring and summer of 1994.

After some back and forth with Mr. Welsh's personal doctor, Dr. Azer, concerning medical records and claims forms, Dr. Azer's records and those of an ophthalmologist, Dr. Fox, were forwarded to Dr.

Petrie, an independent doctor who apparently is used by MetLife for the purpose of claims review.  He concluded that none of the symptoms or diagnoses would prevent Mr. Welsh from working as a tax consultant.  This conclusion was sent to Dr. Azer, who disagreed and told MetLife that he did not think Mr. Welsh should be employed in a long hours/high stress position.  Dr. Azer added that Mr. Welsh had diabetes with related symptoms including dizziness, thirst, and frequent urination.

MetLife denied Mr. Welsh's initial claim for benefits under the Policy on July 5, 1995.  Mr. Welsh appealed on July 27, emphasizing his glaucoma and diabetes.  MetLife informed Mr. Welsh that he did not satisfy the policy's definition of "disabled" and upheld its earlier denial of benefits on August 14, 1995.

During this period, Mr. Welsh also applied for Social Security benefits.  His initial claim, filed January 6, 1995, was denied.  On appeal Mr. Cibener, a Senior Attorney, granted Mr. Welsh benefits under the Social Security Act.  His opinion letter was dated January 10, 1996.  It referenced the symptoms above, as well as gout, hypertension, obesity, and arthritis, and found that Mr. Welsh was credible and not able to perform his past relevant work and "the full range of unskilled sedentary work."

In November, 1995, Mr. Welsh and his wife disputed MetLife's decision and supplemented  the record with the opinion of a psychiatrist, Dr. Katz, pointing to depression as one of the bases for a disability finding.   Dr. Katz opined that Mr. Welsh's "Major Depressive Disorder" predated his termination date at Deloitte & Touche.  MetLife reviewed the claim a third time, and upheld its earlier denial of benefits.

Mr. Welsh sued, seeking long term disability benefits under the Plan.  Judge Letts of the District Court for the Central District of California granted MetLife's Motion for Summary Judgment, and Mr. Welsh appealed.  The Ninth Circuit reversed and remanded, concluding that MetLife had not established that it had applied any, much less the proper, definition of "disabled" to Mr. Welsh's claim, and that it had therefore abused its discretion in denying the claim.  It also pointed out that, despite their assertions to the contrary, Defendants had in fact sought from Dr. Petrie a determination as to Mr. Welsh's disability status,

and had done so without furnishing him the Policy's definition.  The Ninth Circuit specifically did not address the proper standard of review, as Mr. Welsh had, at that point in time, met his burden under the more deferential abuse of discretion standard.  It remanded with instruction to allow Mr. Welsh to supplement the record and to evaluate his claim anew, using the Policy's definition of "disabled."

The Plaintiff's submittals on the pending Motions focus on the Ninth Circuit memorandum disposition, the SSD determination, and on what he claims are gaps in the administrative record now before the court.  The Plaintiff does not particularly address the history of his claim following the Ninth Circuit's remand.  The record demonstrates, however, that Mr. Welsh did in fact supplement the record with additional medical records, diagnoses, and opinions.  It further demonstrates that MetLife sought and obtained independent medical examinations by an endocrinologist (Dr. Silver) and a psychiatrist (Dr. Romm), and sought a third IME by a Dr. Friedman, who apparently declined.  It also had the file reviewed by a Dr. Porter.  Dr. Silver and Dr. Romm were each asked to provide written reports addressing the Plaintiff's diagnoses, symptoms, and impairments, if any, at the relevant times.  Both opined that Mr. Welsh was not precluded from carrying out his duties, either physically (Dr. Silver) or psychologically (Dr. Romm).  Dr. Porter similarly found that despite a number of medical conditions, Mr. Welsh was not and had not been precluded from working.  He did acknowledge that for a period, Mr. Welsh's depression might have limited his ability to work effectively, though he opined that the date range of this period was after Mr. Welsh's last day of work at Deloitte & Touche.

After reviewing the record, including these opinions, MetLife rejected Mr. Welsh's claim for disability benefits under the Policy, concluding that he did not meet the Plan's definition of "disabled" as of the last day he worked for Deloitte & Touche, August 31, 1994.  Its lengthy letter containing this determination was sent to Mr. Welsh on May 17, 2002.

On June 27, 2002, Mr. Welsh appealed again, citing additional work-related (required) "abilities" that were impaired by some or all of his medical conditions.  Dr. Porter reviewed this letter and did not

change his initial opinion.  MetLife denied the appeal on September 23, 2002. This litigation followed.

**STANDARD OF REVIEW**

An  administrative claims determination under ERISA may be reviewed either de novo or under an abuse of discretion standard.  The "default" standard is *de novo*, unless the policy at issue unambiguously grants to the fiduciary discretion to determine benefit eligibility.  *See Kearney v. Standard Insurance Company*, 175 F.3d 1084, 1089 (9th Cir. 1999).  The Policy at issue here unambiguously granted the fiduciary such discretion, and Plaintiff does not argue otherwise.

Even where the policy provides such discretion, however, review of a claims administrator's determination may be *de novo* where the claimant demonstrates "that the fiduciary had a conflict of interest that caused a breach of its fiduciary obligations."  *See Firestone Rubber & Tire Co. v. Burch*, 489 U.S. 101 (1989); *Atwood v. Newmont Gold Co. Inc.,* 45 F.3d 1317 (9th Cir. 1995) ("We hold that this "heightened standard" [applicable where the administrator is also the employer] does not alter our traditional abuse of discretion review in the absence of specific facts indicating that [the employer/administrator's] conflicting interest caused a serious breach of the plan administrator's fiduciary duty to . . . the plan beneficiary.")

The Plaintiff argues for application of the *de novo* standard of review, and in turn for permitting additional discovery.[2]  The gist of this argument is that his employer, Deloitte & Touche, was also the Plan Administrator, thus establishing the apparent conflict of interest necessary for application of the higher standard of review.  His problem however, is in establishing the second necessary element: that the apparent conflict of interest *caused* the fiduciary to breach its obligations to him.

---

[2]Plaintiff concedes that at least one reason for seeking additional discovery is to "determine whether MetLife went beyond the apparent conflict of interest."  As is discussed below, Plaintiff has not made the requisite showing of substantial evidence of an actual conflict or that it caused a substantial breach of duty.  Discovery for the purpose of finding out if there is an actual conflict is not permitted.  *See Newman v. Standard Insurance Company*, 997 F. Supp 1276 (C.D. Cal. 1998).

In support of his claim that the denial of benefits under the Policy was caused by such a breach, Plaintiff relies heavily on the Ninth Circuit's opinion concluding that MetLife abused its discretion in initially denying his claim.  As the Defendants point out, however, the claims review process that is at issue here is not the one that the Ninth Circuit found lacking.  After remand, the Plaintiff supplemented his claim, MetLife had him examined by two new doctors, and had the entire file reviewed by yet another doctor.[3] The determination of ineligibility before this court, unlike the one at issue in California, does specifically reference and apply the Policy's definition of "disabled."   In short, the Plaintiff can ride the Ninth Circuit's opinion only so far – it does not find a conflict, does not require the application of the *de novo* standard of review to whatever determination was to be made in the future, and certainly does not mandate a finding that Mr. Welsh was in fact disabled prior to his termination date.  The claims review process at issue there is not at issue here.

More temporally, the Plaintiff argues that MetLife's failure to consider the SSD determination that he was disabled, under a similar definition of the term, is evidence of a conflict (and that it creates a question of fact as to his disability).  However, he does not cite any authority suggesting that the failure to consider such a determination is evidence of a conflict, much less that it is a binding determination of the disability question, and the court is aware of none. The SSD opinion  – which is not a medical opinion – is simply one reviewer's analysis of the record.  It appears that that review was far less detailed than the one undertaken by MetLife, and did not include any sort of IME.   While it might mildly inform the issue of abuse of discretion, the Plaintiff's claim that the SSD opinion was not considered is not persuasive evidence that the apparent conflict caused a breach of fiduciary duty.

Plaintiff's third attempt to trigger  *de novo* review is based on what it claims are gaps in the record, and the alleged failure of Drs. Romm and Silver to obtain and/or consider evidence he argues supports a

---

[3]Plaintiff points out that Dr. Porter is Dr. Petrie's superior and the owner of the firm which did both record reviews.

disability finding.    He also argues that possibly helpful additional analyses mentioned by Dr. Romm were not disclosed to him, and were not conducted.  Assuming, without deciding, that such additional testing in 2002 could have informed the disability determination at the relevant August 1994 time frame, the court does not conclude that this failure is evidence of an actual conflict, or that any conflict of interest caused a breach of fiduciary duty.  It is perhaps relevant, again, as to whether MetLife abused its discretion.

The alleged gaps in the record lead to the same result: they are not evidence of an actual conflict, nor that any conflict caused a breach.  Again, assuming they exist, they go to the exercise of discretion.  It should also be noted that the gaps and failures to follow up are not themselves evidence of disability. Somewhat lacking from the Plaintiff's side is medical opinion evidence containing a definitive statement, supported by analysis, that, as of his termination date, Mr. Welsh was disabled as that term is defined in the Policy.

That, however, is an issue that relates to the merits.  On the extensive record and having considered the arguments of the parties, the court concludes and ORDERS that the proper standard of review for this claim is abuse of discretion.  For that reason, no additional evidence is permitted or required, and Defendant's motion for a Protective Order [Dkt. #19] is GRANTED.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient."  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a

motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### SUMMARY JUDGMENT ON THE MERITS

Defendants have moved for Summary Judgment, seeking a determination that they did not abuse their discretion and the affirmation of the administrative denial of benefits under the Plan.  Plaintiff responds by arguing in favor of *de novo* review, and seeking Summary Judgment in his favor.  The court has determined that the correct standard is abuse of discretion.  The Plaintiff does not appear to overtly seek summary judgment in his favor under this standard.  He does argue that when viewed in the light most favorable to him, the evidence supports the conclusion that his claim did not receive the required "full and fair review" by MetLife.

The court is aware that this is a bench trial, and that it has now reviewed the record that will comprise all of the evidence at that trial.  The case would therefore seem at first blush to be amenable to summary adjudication.  The court is mindful, however, of the admonition in *Kearney* that the standards for summary judgment (even cross motions) are different than the one to be applied when conducting a "trial," which is in fact primarily a re-reading of the record under an abuse of discretion standard.  Viewed in the light most favorable to the Plaintiff, the overall evidence does not support summary judgment in Defendants' favor.  The reverse is also true; even under a *de novo* standard, the Plaintiff is not entitled to summary judgment.  The Cross Motions for Summary Judgment are therefore DENIED.

The court will therefore conduct a "trial" on the record before it, applying the abuse of discretion standard outlined in the Policy.  As the standard for such a review is different than that addressed in the parties' summary judgment briefing, it would be helpful for the parties to submit proposed findings of fact and conclusions of law, supported by short "trial briefs" addressing the claims review process and evidence, and advocating under the applicable abuse of discretion standard.  There will not, however, be a

trial in the traditional sense, and there will not be additional witnesses or evidence.

The court will therefore STRIKE the Pretrial Conference, all other pretrial deadlines, and the trial date. It is further ORDERED that the parties shall submit proposed findings and conclusions, with short supporting trial briefs, by May 23. Following a review of the administrative record under the abuse of discretion standard, the court will contact the parties to schedule final oral argument.

DATED this 4th day of May, 2005.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE